# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BEELER/HALL, Minors.

UNPUBLISHED
January 20, 2015

No. 321648
Genesee Circuit Court
Family Division
LC No. 12-128963-NA

Before: DONOFRIO, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor children pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). We affirm.

The minor children, three girls and one severely autistic boy, were made court wards after respondent was arrested for a probation violation. Although a maternal aunt was caring for the children, respondent had not established a legal guardianship with the aunt or provided the aunt with legal authority to sign medical authorizations. Additionally, a review of respondent's home revealed that it was in a deplorable condition. The floors were not visible because they were covered by clothing and other items. The eldest child, SB1, noted that harmful objects were hidden underneath items on the floor, including nails, glass, and pills. In fact, the autistic child, SH, had taken some pills that were left on the floor and suffered a harmful reaction. The heat, water, and electricity were shut off from respondent's home, and she did not have the financial resources to have the services restored. The lack of utilities exacerbated the condition of the home by causing a moldy refrigerator. After the children were placed with the maternal aunt, they indicated that they had been abused and neglected by respondent because of her drug and alcohol use. The court obtained jurisdiction over the children after respondent admitted responsibility for the condition of the home.

A parent-agency agreement was prepared, but respondent denied that it was ever presented to her. According to caseworkers, the agreement was presented to respondent for signature, but she refused to sign it. Nonetheless, the court ordered respondent to comply with services, and respondent admitted knowledge of the court orders. Respondent alleged that she complied with all requirements but was unable to obtain a legal source of income, although she worked as a volunteer. Although respondent alleged that she sought her own treatment and counseling through the HOPE Network, Anna Freeman of the HOPE Network was not qualified to provide counseling services, and the benefits of the program were premised on the client's

-1-

self-reporting. The Department of Human Services (DHS) caseworkers testified that respondent failed to substantially comply with the requirements of the parent-agency agreement and failed to benefit from the services provided. For example, although respondent did complete a parenting class, she did not exhibit any benefit during parenting visits. Respondent did complete 12 sessions of therapy, but she did not admit to or comply with the recommendation that additional services were necessary.

Evidence indicated that respondent's drug and alcohol use had caused two other children, now adults, to be voluntarily placed with a relative when they were minors, without court intervention. However, respondent claimed that she did not regularly use marijuana until she obtained a medical marijuana card, which was after the children were removed. However, despite requests, the medical marijuana card was never presented to caseworkers, and there is no indication that medical records substantiating the need for medical marijuana were ever presented to the court. During the pendency of the case, respondent and her father were frequently aggressive and argumentative with caseworkers, which contributed to the termination of parenting time. When a no-contact order was issued because of respondent's conduct, respondent knowingly violated the court's order by attending the children's church and causing a scene. Respondent admitted the violation but alleged that the order was unfair and denied that the disputes occurred in the presence of the children, despite evidence to the contrary. The trial court held that respondent's failure to comply with and benefit from services established statutory grounds for termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) by clear and convincing evidence, and that termination of respondent's parental rights was in the children's best interests.

## I. STATUTORY GROUNDS

Respondent first argues that the trial court clearly erred in finding that the statutory bases for termination were established. "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *Id.*; see also MCR 3.977(K). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Laster*, 303 Mich App 485, 491; 845 NW2d 540 (2013) (citation omitted).

The petition requested termination of respondent's parental rights pursuant to the following provisions of MCL 712A.19b(3):

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

-2-

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

MCL 712A.19b(3)(c)(*i*) is established when the conditions that brought the children into care continue to exist despite time and opportunity to make changes and take advantage of services. *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Respondent argues that the conditions that led to the adjudication were rectified because she had suitable housing in her own home or her father's home, improved her parenting skills by taking classes, and participated in counseling. The trial court was presented with conflicting testimony from respondent and other witnesses regarding the extent to which respondent complied with the terms of the parent-agency agreement and benefitted from services. This Court must give due regard to the opportunity of the trial court to judge the credibility of the witnesses who appeared before it. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011); see also MCR 2.613(C); MCR 3.902(A). When witnesses testify to diametrically opposed assertions of fact, the test of credibility must lie where the system has reposed it—with the trier of fact. *Kalamazoo Co Rd Comm'rs v Bera*, 373 Mich 310, 314; 129 NW2d 427 (1964). Mere satisfaction of the terms of an agency agreement or case service plan does not necessarily warrant return of the child. *In re Gazella*, 264 Mich App 668, 676-677; 692 NW2d 708 (2005). Rather, "benefitting from the services [is] an inherent and necessary part of the compliance with the case service plan." *Id*. at 677. "[T]he court shall view the failure of the parent to substantially comply with the terms and conditions of the case service plan . . . as evidence that return of the child to his or her parent would cause a substantial risk of harm to the child's life, physical health, or mental well-being." MCL 712A.19a(5).

On appeal, respondent asserts that petitioner failed to present her with the parent-agency agreement and involve her in services. The state may not fail to involve or evaluate the respondent and then premise termination of parental rights in part on the respondent's failure to comply with the service plan. *In re Mason*, 486 Mich 142, 159; 782 NW2d 747 (2010). "While the DHS has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate

in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). The trial court did not clearly err in failing to give credence to respondent's arguments. Although respondent alleged that she was never presented with the parent-agency agreement, the trial court noted that respondent was required to comply with court orders, and that it had ordered respondent to comply with services, delineating the requirements in the parent-agency agreement. Respondent acknowledged at the termination hearings that she was aware of the court orders. And while respondent claimed that she availed herself of services by voluntarily participating in services with the HOPE Network, the trial court found that she did not benefit from them or other services. Rather, it noted that respondent remained confrontational, was unable to manage the children during visits, failed to obtain suitable housing, violated court orders, and did not obtain a stable income.

Despite respondent's contention that she cleaned her home and it was acceptable, or in the alternative, that her father's home was acceptable, she never requested a home study at either home. Furthermore, respondent had not resided in her home since November 2012 and admitted that the home did not have running water because pipes had been stolen. She was living with her father. Respondent did complete a parenting class, but service providers testified that they did not see improvement during parenting time, but rather continued to see conflicts between respondent, her father, and the workers. Respondent's continued aggression and hostility played a role in the termination of parenting time. Once the no-contact order was entered, respondent knowingly visited the children at their church and caused a scene, requiring police intervention. This conduct demonstrated defiance of direction by both caseworkers and the trial court. Moreover, during visits respondent had difficulty maintaining the three girls and the special needs of SH. The visits were characterized as chaotic, and SH had to be watched by observers to ensure that he did not consume inappropriate objects. The parenting visits demonstrated respondent's continued inability to manage her children. The evidence established that the conditions that led to the adjudication continued to exist despite time and opportunity to make changes. *In re White*, 303 Mich App at 710. Accordingly, the trial court did not clearly err in finding that termination was justified under MCL 712A.19b(3)(c)(*i*).

We reject respondent's argument that the trial court violated Michigan's Medical Marihuana Act (MMMA), MCL 333.26371 *et seq.*, by failing to consider her valid medical marijuana card when conditioning and terminating parenting time, and terminating her parental rights, because of her marijuana use. Section 4 of the MMMA provides, in relevant part:

> (c) A person shall not be denied custody or visitation of a minor for acting, in accordance with this act, unless the person's behavior is such that it creates an unreasonable danger to the minor that can be clearly articulated and substantiated. [MCL 333.26424(c).]

Despite requests, respondent failed to present her medical marijuana card or medical records documenting her medical need for marijuana. Furthermore, the trial court noted that there were other issues "beyond marijuana usage" that led to the termination of respondent's parenting time, and the trial court did not cite respondent's marijuana use as a basis for its termination decision. Thus, respondent was not denied custody or visitation on the basis of her medical use of marijuana in accordance with the MMMA. We also note that MCL 333.26424(c) does not prohibit a court from considering a medical marijuana patient's use of marijuana as a

-4-

basis for denying custody or visitation if the marijuana use creates "an unreasonable danger to the minor that can be clearly articulated and substantiated." The evidence in this case clearly showed that respondent's use of marijuana interfered with her ability to attend to and care for her children, and, contrary to what respondent asserts, such evidence was not limited to the testimony of SB1. Moreover, respondent herself admitted that she sent SB1 to purchase marijuana for her. For all of these reasons, we reject respondent's claim of error premised on the MMMA.

Although only one statutory ground for termination need be established, *In re Laster*, 303 Mich App at 495, the evidence also supported termination pursuant to MCL 712A.19b(3)(c)(*ii*), (g), and (j). Therefore, the trial court did not clearly err in finding that the statutory grounds for termination were supported by clear and convincing evidence. *In re Moss*, 301 Mich App at 80.

## II. BEST INTERESTS

Respondent next argues that the trial court clearly erred in finding that termination of her parental rights was in the children's best interests. Once a statutory ground for termination has been proven, the trial court must determine whether the petitioner has proven by a preponderance of the evidence that termination is in the children's best interests. MCL 712A.19b(5); *In re Moss*, 301 Mich App at 90. Factors to consider include the respondent's past history, psychological evaluations, parenting techniques during parenting time, domestic violence, the age of the child, visitation and meaningful contact, family bond, participation in treatment plan and counseling, and the foster environment and potential for adoption. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009); *In re BZ*, 264 Mich App 286, 301; 690 NW2d 505 (2004); *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). The child's need for permanency, stability, and finality is also a consideration. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). "We review a trial court's decision regarding a child's best interests for clear error." *In re Laster*, 303 Mich App at 496. This Court also "review[s] for clear error whether the trial court failed to address a significant difference between each child's best interests." *In re White*, 303 Mich App at 716.

Respondent was the primary caregiver when jurisdiction over the children was obtained. Photographs of the home reflected that the floor was completely covered in clothing, boxes, empty food and drink containers, and other items. Underneath the items covering the floor were nails, glass, and other harmful objects. Additionally, respondent left her pills around, and SH ingested them, causing an unfavorable reaction. Because of respondent's marijuana use, she was not attentive to the home's condition, clean clothing, and meal preparation. Consequently, SB1 was responsible for SH and her other younger siblings. The condition of the home, coupled with respondent's failure to address it, and the children's needs demonstrated that the children were at risk of harm in her care.

Respondent testified that she remedied the conditions of the home, and the children could be returned to her at either her own home or her father's home. Although respondent presented photographs of the home from 2012, she did not present recent photographs of a clean home, and there were no photographs of the bedrooms. Despite reporting that her own home was appropriate, respondent failed to request a recent evaluation, and she admitted that the home did not have running water because pipes had been stolen. Caseworkers also testified that

respondent either failed to comply with all necessary requirements of her treatment plan, and failed to benefit from the services that were provided. For example, she continued to demonstrate emotional instability by engaging in confrontations with the workers and the children's therapist. Respondent elected to instead participate in services through the HOPE Network, but those services were deficient because they were premised on respondent's self-reporting, and she did not receive counseling from Freeman as alleged. Respondent had previously neglected her two oldest children, and she failed to remedy those conditions for the four children subject to this petition.

The children's relative placement provided a structured environment that addressed their medical and psychological needs, and presented the opportunity for adoption. The parenting time reflected that respondent was unable to mange her four children during visits. Although respondent claimed that she benefitted from parenting classes and therapy, it was not demonstrated during visits or in her conduct with agency workers. The children needed permanency, stability, and finality that respondent was unable to provide.

Respondent argues that the trial court failed to distinguish between the best interests of the children individually, because SB3 expressed that she could return to respondent's care. However, the trial court is only required to individually address the children's best interests when those interests significantly differ; the trial court need not make explicit findings regarding each child where the factual findings would be redundant. *In re White*, 303 Mich App at 715-716. Here, irrespective of any individual statement by SB3, the children were similarly situated. Moreover, testimony indicated that SB3 was afraid to make negative statements about respondent because she did not want to be disloyal. Even assuming that SB3 did express a preference to be placed with respondent, however, respondent failed to demonstrate that she had an appropriate home, emotional stability, and the ability to ensure that SB3 or any of the children were not placed at risk of harm. The trial court did not clearly err in finding that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Pat M. Donofrio
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens